IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
TONYA TOLBERT DUVALL,         )
                              )
          Plaintiff,          )
                              )
     v.                       )         1:12CV1144
                              )
CAROLYN W. COLVIN,[1]         )
Acting Commissioner of Social )
Security,                     )
                              )
          Defendant.          )
```

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Plaintiff Tonya Tolbert Duvall ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), codified as amended at 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Act.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

Plaintiff subsequently filed a Motion for Judgment Reversing or Modifying the Decision of the Commissioner or Remanding the Cause for a Rehearing (Doc. 11), and the Commissioner has filed a Motion for Judgment on the Pleadings (Doc. 17). Additionally, the administrative record has been certified to this court for review.[2]

For the reasons set forth below, the Commissioner's motion will be granted, Plaintiff's motion to reverse the decision of the Commissioner and request for remand will be denied, and the case will be dismissed.

I.  **BACKGROUND**

Plaintiff filed an application for disability insurance benefits on December 18, 2008, alleging a disability beginning on January 17, 2006. (Tr. at 11.) The claim was denied initially on May 5, 2009, and upon reconsideration on August 7, 2009. (Id.) A hearing was held before an Administrative Law Judge ("ALJ") on January 6, 2011, and in a decision dated March 9, 2011, the ALJ denied Plaintiff's application. (Id. at 11-20.)

In making this determination, the ALJ found that Plaintiff had the following severe impairment: reactive airway disease.

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Doc. 9.)

(Id. at 13.) The ALJ also found that Plaintiff's impairments, alone or in combination, did not meet or equal a listing impairment. (Id. at 15.) The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform medium work and is limited to moderate exposure to respiratory irritants such as fumes, odors, gases, and dirt. (Id.)

The ALJ then determined that Plaintiff was capable of performing her past relevant work as a cashier II and as a companion. (Id. at 18.) In addition to the ability to perform past relevant work, considering Plaintiff's age, education, work experience and RFC, there were also other jobs that existed in significant numbers in the national economy that Plaintiff was able to perform, including vault worker, mail carrier (rural), chiropractor assistant, recreation facility attendant, information clerk, and router, delivery marker. (Id. at 19.) Thus, the ALJ concluded that Plaintiff was not disabled under the framework of Medical-Vocational Rule 203.30. (Id. at 19-20.)

On August 30, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision a final decision. (Id. at 1-3.) Plaintiff filed the present action on October 26, 2012.

**II. LEGAL STANDARD**

Federal law authorizes judicial review of Commissioner's denial of social security benefits. 42 U.S.C. § 405(g); Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472.

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

---

[3] As set out in Craig:

> The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical.

Craig v. Chater, 76 F.3d 585, 589 n.1 (4th Cir. 1996).

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')."

Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## III. ANALYSIS

Plaintiff asserts that the Commissioner erred with respect to four issues: (1) the ALJ failed to fully consider the deposition testimony of Dr. William J. Meggs; (2) the failure alleged in Plaintiff's first assignment of error caused the ALJ to make other harmful legal errors; (3) the ALJ erred by making contradictory findings about Plaintiff's RFC; and (4) the ALJ relied on flawed vocational expert ("VE") testimony. (Pl.'s Br. in Supp. of Mot. for J. ("Pl.'s Br.") (Doc. 12) at 5.) Because this court finds that the record supports the ALJ's findings with regard to all four issues raised by Plaintiff, this court will not reverse Commissioner's findings.

### A. Weight of Dr. Meggs' Deposition

Plaintiff's first and second arguments stem from Plaintiff's contention that the ALJ did not properly consider the opinion of Dr. Meggs, a physician who examined Plaintiff. (Pl.'s Br. (Doc. 12) at 6-14.) Dr. Meggs' opinion was given in a deposition that occurred in a lawsuit that Plaintiff and her

---

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

- 9 -

husband filed against Phoenix Restoration Services. (Tr. at 344-10.) Dr. Meggs testified at that deposition that his role was "expert witness" and treating physician. (Id. at 357.) He was hired as an expert witness, but clinical consultation was a part of Dr. Meggs' interaction with Plaintiff. (Id.) Plaintiff specifically asserts that, "[t]he Administrative Law Judge did not consider fully or explain the weight given to Dr. Meggs's deposition." (Pl.'s Br. (Doc. 12) at 8.)

However, the ALJ's decision itself suggests otherwise. The ALJ explained:

> As for the opinion evidence, the undersigned accords little weight to the opinion of Dr. Meggs . . . . He examined the claimant on only two occasions, and his opinion appears to be based in large part on the claimant's subjective reports rather than any specific clinical observations.

(Tr. at 17.) In her decision, the ALJ explicitly referenced the deposition testimony of Dr. Meggs and explains the weight accorded to that evidence. (Id.) It is well-settled that an ALJ is not required to make a detailed analysis of every piece of evidence. See Kelly v. Astrue, No. 5:08-CV-289-FL, 2009 WL 1346241, at *11 n.3 (E.D.N.C. May 12, 2009) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)); see also Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005) ("The ALJ need

not, however, provide a 'complete written evaluation of every piece of testimony and evidence.'").

Further, the ALJ explained in detail why she did not afford Dr. Meggs' opinion greater weight. Dr. Meggs did not perform lab tests but concluded, based on a physical examination alone, that Plaintiff suffered from irritant rhinosinusitis, reactive upper-airway dysfunction syndrome ("RUDS") and airborne contact dermatitis. (Tr. at 307-310.) Dr. Meggs found that, due to this condition, Plaintiff's prospects for gainful employment were "dismal." (Id. at 310.) The ALJ stated that she assigned little weight to Dr. Meggs' opinions because they were inconsistent with both other medical evidence and Plaintiff's own reported activities of daily living. (Id. at 17-18.) The ALJ specifically asserts that Plaintiff's self-reported activity level[6] seems to contradict the expected lifestyle limitations of a patient with RUDS suggested by Dr. Meggs. (Id.)

The medical evidence also supports the ALJ's findings. On April 18, 2005, Plaintiff was seen by a resident overseen by Robert Chin, Jr., M.D. (Id. at 286.) Plaintiff reported

---

[6] Plaintiff testified that she attended church once a week (Tr. at 37-38), visited friends in their homes once per week (id. at 38), and went to the movies bi-monthly (id. at 39). Plaintiff also testified that her husband regularly won trips through his job, and that the family generally all went on these trips. (Id. at 45.) These trips usually involved flying to the destination and staying in a hotel. (Id. at 45-46.)

- 11 -

headaches, labored breathing, and teary eyes after being exposed to the fumes in her home. (Id.) Plaintiff also reported labored breathing upon exposure to strong scents. (Id.) After a physical exam and lab work, Dr. Chin diagnosed Plaintiff with possible reactive airways disease ("RADS"). (Id. at 287.) On May 23, 2005, Plaintiff reported that she was doing well when she avoided exposure to her former home. (Tr. at 281.) This medical evidence is in direct contradiction with Dr. Meggs' testimony regarding Plaintiff's limitations.

The ALJ goes on to say that she "accords greater weight to the opinion of the State agency medical consultant, Dr. Cohen." (Id. at 18.) The ALJ found Dr. Cohen's opinion more consistent with the evidence overall. (Id.) The evidence shows that the ALJ did consider Dr. Meggs' deposition testimony and further shows why the ALJ accorded it little weight. Accordingly, Plaintiff's argument that the ALJ failed to fully consider Dr. Meggs' deposition testimony is without merit and does not indicate that

the ALJ's decision was not based on substantial evidence.[7] The record indicates that the ALJ considered Dr. Meggs' opinion, along with the opinions of other medical professionals, and gave Dr. Meggs' testimony due weight when taken in context of the full record.

**B.    Plaintiff's RFC**

Plaintiff next contends that the ALJ erred in formulating the RFC. Plaintiff's argument is based on Plaintiff's previous assertion that the ALJ failed to give proper weight to Dr. Meggs' deposition testimony. However, as explained supra, the ALJ gave proper weight to Dr. Meggs' testimony, and the record shows that the ALJ's RFC determination is supported by substantial evidence.

State agency consultative physician, Dr. Alan. B. Cohen, concluded that Plaintiff was capable of medium work and must

---

[7] Generally, the treating physician rule "requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight. The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (internal citations omitted).  Like with the present case, the Fourth Circuit has found that the ALJ did not err when the ALJ afforded "little weight" to the opinion of a treating physician when the treating physician's diagnosis was "based largely upon the claimant's self-reported symptoms" and Plaintiff's "laboratory tests and medical examinations were within normal parameters."  Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

avoid even moderate exposure to respiratory irritants. (Tr. at 337-40.) Dr. Cohen specifically addressed Dr. Meggs' findings that Plaintiff's "prognosis for gainfule [sic] employment is dismal." (Id. at 339-40.) Dr. Cohen did not find evidence from Plaintiff herself or Plaintiff's medical record to support such a finding. (Id.) However, based on the evidence at hand, Dr. Cohen's limitation precluded even moderate irritant exposure. Looking at the record as a whole, the ALJ found that Dr. Cohen's opinion regarding environmental irritant exposure was incongruent with Plaintiff's self-reported activities of daily living and travel. (Id. at 16-18.) Accordingly, the ALJ's determination that Plaintiff was capable of medium work with no more than moderate exposure to respiratory irritants is supported by, and consistent with, her activities of daily living and travel.

Further, although Dr. Meggs stated that people suffering from RUDS were unable to get out of the house because they become so ill from low-level exposure to everyday toxins, Plaintiff was able to dine out several times a week, go to church, grocery shop and attend movies. More notably, as discussed supra, Plaintiff has traveled extensively, which has included traveling on an airplane, taking cruises, riding the Metro, staying in hotels and availing herself of other

commercial and residential accommodations. (Id. at 16.) This contradicts Dr. Meggs' opinion that Plaintiff would only be able to work in a pristine environment, such as "a glass booth." (Id. at 407.)

As there is substantial evidence to support the ALJ's RFC determination regarding Plaintiff's exposure to environmental respiratory irritants, Plaintiff's argument on this issue should be rejected.

### C. <u>VE Testimony</u>

Finally, Plaintiff argues that the hypothetical questions to the VE failed to reflect both Dr. Meggs' limitation to a "pristine" work environment and Dr. Cohen's opinion that Plaintiff must avoid even moderate exposure to respiratory irritants. (Pl.'s Br. (Doc. 12) at 16.) As noted above, the ALJ discounted Dr. Meggs' opinion for several reasons. In addition, Commissioner contends that Dr. Cohen was not aware of Plaintiff's extensive travel when he made his recommendation regarding environmental limitations. (Def.'s Mem. in Supp. of Mot. for J. on the Pleadings (Doc. 18) at 8.) Moreover, when questioned about possible fumes and odors in the work place, the VE testified that such factors are more properly characterized as accommodations rather than vocational considerations. (Tr. at 87-90.) Thus, in the jobs identified by the VE, a person who

- 15 -

Case 1:12-cv-01144-WO-JEP   Document 22   Filed 04/29/15   Page 15 of 17

could not tolerate more than moderate exposure to such irritants could request that an employer take steps to limit the presence of such irritants. Inasmuch as the hypothetical questions posed to the VE properly reflected all the limitations as found by the ALJ, there was no error at this step of the sequential evaluation. See Mickles v. Shalala, 29 F.3d 918, 929 n.7 (4th Cir. 1994) (concluding that the hypothetical question presented to the VE need only include the impairments and limitations that the ALJ finds credible). Consequently, Plaintiff's argument on this issue lacks merit. Plaintiff has made no showing negating a finding that the ALJ's determination denying Plaintiff benefits were based on substantial evidence.

**IV. <u>CONCLUSION</u>**

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Judgment Reversing or Modifying the Decision of the Commissioner or Remanding the Cause for a Rehearing (Doc. 11) is **DENIED,** that the Commissioner's Motion for Judgment on the Pleadings (Doc. 17) is **GRANTED,** and that this case is **DISMISSED WITH PREJUDICE.**

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 29th day of April, 2015.

                              /s/ William L. Osteen, Jr.
                              United States District Judge